This is an appeal from a judgment of the Lucas County Court of Common Pleas which entered judgment for all appellees on the claims set forth in the complaint filed by appellant, Cherrydale Farms, Inc. ("Cherrydale"). Appellant sets forth the following five assignments of error:
"STATEMENT OF ASSIGNMENTS OF ERROR
 "1. The trial court erred by denying Cherrydale injunctive relief.
 "2. The trial court erred by finding Myers' restrictive covenant unenforceable.
 "3. The trial court erred by finding Myers' non-disclosure agreement unenforceable.
 "4. The trial court erred by finding Enterprises should not be enjoined from tortiously interfering with the Cherrydale/Myers' relationship.
 "5. The trial court erred by finding that Lodwig's and Enterprises were separate entities in direct contradiction to Defendants' judicial admission."
In considering appellant's assignments of error and arguments in support thereof, this court reviewed the record of this cause, the relevant statutory and case law and applied this law. After doing so, we conclude that the well-reasoned opinion and journal entry of the Honorable Bruce Huffman properly determines and correctly disposes of the material issues in this case. We therefore adopt the judgment of the trial court as our own. See Appendix A. Appellant's first, second, third, fourth and fifth assignments of error are found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ----------------------- JUDGE
James R. Sherck, J. ----------------------- JUDGE
Richard W. Knepper, J. CONCUR. ----------------------- JUDGE
Pursuant to prior order of the Court, a consolidated final trial on the merits was conducted to the Court commencing, Tuesday, July 1, 1997. Trial was recessed on Thursday, July 3, 1997 and completed on July 14 and 15, 1997. On July 15, 1997, the Plaintiff moved for admission of it's exhibits, which were filed upon by this Court and then the Plaintiff rested.
The defendants moved the admission of their exhibits identified during Plaintiff's case in chief and then all moved for dismissal, pursuant to Civ.R. 41(B) (2), on the ground that, upon the facts and the law, Plaintiff had shown no right to relief. This Court then told counsel that, as it would have to review the exhibits, its notes and the depositions of John Krebill and Rose Ann Kreitner, which were offered into evidence by Plaintiff (their admission stipulated by Defendants) it could not rule at once so it would take their motions under advisement while Defendants commenced presenting their defenses.
Defendants then advised the Court that they would not present any witnesses, and rested.
All parties agreed to file post-trial briefs by Monday July 21, 1997, and this Court, having had time by then to have reviewed its notes, the exhibits and the stipulated depositions of Rose Ann Kreitner and John Krebill, would issue its opinion, findings of fact and conclusions of law and its judgment.
 PRELIMINARY MATTERS
Plaintiff's Complaint filed March 11, 1997 contained what it denominated as six causes of action against one or more of four separate Defendants asking for money damages at law and equitable relief consisting of preliminary and permanent injunctive relief, an accounting and any other equitable or compensatory relief warranted.
Plaintiff's six claims in its Complaint overlap and duplicate each other, but are essentially and substantively:
1. Against Defendant Tony Myers, hereinafter called "Myers", for breach of ¶¶ 7 and 8 of an independent contractor contract captioned "Sales Representative Contract" dated 1/21/96, attached as Exhibit A to Plaintiff's Complaint and entered into evidence as Plaintiff's Exhibit 4 (First Cause) which states in full:
 "7. Disclosure of Confidential Information. The Sales Representative acknowledges that any list of the Company's customers, the information contained in Company publications, the selling and marketing techniques developed by the Company, information contained in the Company's files and reports prepared by the Sales Representative are confidential, trade secrets, privileged, valuable, special and the unique work product of the Company and are an asset of its business. The Sales Representative will not, during the term of his/her engagement, and for a period of one year after the termination thereof, disclose any of the aforesaid confidential information to any competitor of the company.
 8. Restrictive Covenants. During the term of this Sales Representative Contract and for a period of one (1) year following its termination, the Sales representative will not, within the territory described in Paragraph (5) above, or the attached schedules, directly or indirectly, solicit or contact any present or former customer of the Company, formerly solicited or contacted by the Sales Representative while engaged by the Company, for the purpose of soliciting or selling such customers any products or programs substantially similar to those sold by the Company at the time of the termination of this Sales Representative Contract. The Sales Representative acknowledges that the territorial limitation, duration and scope of this restrictive covenant are fair and reasonable. Should this restrictive covenant be litigated or otherwise disputed, the one-year period of the restrictive covenant shall be measured from the date relief is granted, but reduced by the time between the date of termination of employment and the date of the first violation of the restrictive covenant by Sales representative."
2. Against Defendant Lodwig Enterprises, Inc., hereinafter called "enterprises", and Keefe and Bonita Lodwig, hereinafter called "Keefe", "Bonita" and collectively "Lodwigs", for tortious interference with Myers' "employment relationship" with Plaintiff. (Second Cause)
3. Against "enterprises" and "Lodwigs" for improperly inducing and assisting Myers' breach of contract. (Third Cause)
4. Against "Enterprises" and "Lodwigs" for unfair competition by "enticing away Myers" and "taking advantage" of Myers' "confidential relationships" with his customer schools and using Plaintiff's "confidential information" obtained from Myers. (Fourth Cause)
5. Against Myers, Enterprises and Lodwigs for unjust enrichment based on the first Four Causes. (Fifth Cause)
6. While called a Sixth Cause of Action such allegation actually asks for the equitable relief of a "full accounting". (Sixth Cause)
Because Defendants elected to rely upon the evidence adduced in Plaintiff's case in chief, their Civ.R. 41(B) (2) Motion is moot because Court has the entire equitable case before it and the standard is the same; "Has the Plaintiff established by clear and convincing evidence the right to the equitable relief demanded?"
Because each Defendant is in a different status vis-a-vis the Plaintiff, this court shall speak to each Defendant separately.
Defendant Tony Myers:
Because Plaintiff's claims are based upon alleged breaches of the 1/21/96 Independent Contract Agreement captioned "Sales Representative Contract" (Plaintiff's Exhibit 4), a number of threshold issues must be addressed.
First, was such contract in force in January, 1997 when Myers terminated his employment with Plaintiff?
This Court's findings of fact as to this issue are:
1. Prior to 1/21/96, Myers had over two decades of experience in the fund raising business and had well-established relationships with fund raising customers, including public schools.
2. The "Sales Representative Contract" (Plaintiff's Exhibit 4) established Myers as an independent contractor over whom Plaintiff neither had nor exercise any control over the mode, manner or method of Myers' performance as it would over an employee.
3. As an independent contractor, Myers was conducting an independent business (in addition to two other long time fund raising business), paying for all sales material including brochures, forms and promotional material obtained from Plaintiff, plus all travel expenses, telephone expenses, office and secretarial expenses and even the costs of any appreciation party or other awards given to the student sales persons.
4. Myers was then, effective 3/1/96, hired as an employee of Plaintiff with a salary, fringe benefits, and all the other controls and benefits as an employee as evidenced by a letter dated 5/7/96 and without any non-compete, non-solicitation or non-disclosure covenant (Plaintiff's exhibit 5).
5. There are no documents or testimony that demonstrated any agreement by Myers that the 5/7/96 letter constituted a mere modification of his independent contractor contract.
6. Myers then continued as an employee of Plaintiff until resigning on 1/24/97.
While Ross Cherry, Plaintiff's first witness, testified and Plaintiff's counsel argued that the 5/7/96 letter from David Ferencek, Plaintiff's fund raising sales manager, was merely a "modification" of the 1/21/96 independent contractor agreement, such testimony is found to be not credible.
This Court makes the following conclusions of law:
1. Plaintiff's hiring of Myers as an employee was a new contract which terminated the 1/21/96 independent contractor agreement which then ceased to exist.
2. Since Myers' employment contract with Plaintiff, as evidenced by Plaintiff's Exhibit 5, contained no restrictive covenants, Myers' conduct after leaving Plaintiff's employment was not in breach of any contract with Plaintiff.
3. Myers is entitled to judgment as to Plaintiff's claims for equitable relief.
Even if the 1/21/96 independent contractor agreement's restrictive covenants were still in effect when Myers resigned on 1/24/97, the question for this Court would be, whether or not, under all the circumstances, they are reasonable and enforceable.
This Court's additional Findings of Fact are:
7. During Myers' short status as an independent sales representative for Plaintiff between 1/21/96 and 3/1/96, he did not receive any training but was a fully-trained fund raising sales representative before any relationship with Plaintiff.
8. Plaintiff presented no evidence that it invested any time or money in training Myers as a sales representative.
9. Plaintiff presented no evidence that Myers' conduct has caused it material harm.
10. Enforcement of the restrictive covenants against Myers would cause him material harm, including inability to pursue an over 20-year career in the area where he lives and works.
This Court's additional Conclusions of Law are:
4. Plaintiff's restrictive covenants seek to eliminate ordinary competition, not unfair competition.
5. Any benefit to Plaintiff is disproportional to the detriment to Myers.
6. Because Plaintiff's restrictive covenants necessarily restrict public schools' access to competitive fund raising products and services, it is injurious to the public.
7. In view of Plaintiff's weak interest in enforcing the non-compete covenant, such covenant is unreasonable and unenforceable.
8. Myers is entitled to judgment on Plaintiff's claim that he breached the non-compete covenants by his conduct.
However, even if the 1/21/96 independent contractor agreement's restrictive covenants were still in effect when Myers resigned on 1/24/97, the question remains whether or not Myers disclosed to Plaintiff's competitors any information obtained from Plaintiff which qualified as confidential information, i.e. "trade secrets" entitled to protection under Ohio law. This Court's additional findings of fact as to that question are:
11. Plaintiff offered no evidence that it ever complied a "customer list" and provided it to Myers.
12. All customers listed on Plaintiff's Exhibit 1 are merely schools to whom Myers has sold fund raising goods provided Myers by Plaintiff and others.
13. Such schools' names, addresses and phone numbers are available to the general public in telephone books and other published directories, among other sources.
14. Any "confidential relationships" developed by Myers with these school fund raising persons were not developed during Myers' short relationship with Plaintiff but, if they existed at all, would have been the result of Myers' over 20 years' experience in the fund raising business before he worked as an independent sales representative for Plaintiff from 1/21/96 to 3/1/96.
15. Any information Myers had about Plaintiff's carnival-like appreciation parties it called "the Mega Event" was readily available from distributors of the carnival style equipment utilized by Plaintiff which was available for sale to anyone.
16. All of the appreciation party "Mega Event" printed material entered into evidence by Plaintiff without objection was sold by Plaintiff to all its independent sales representatives for distribution to potential customers and customers such as schools, parents, children, and other fund raising organizations.
17. Plaintiff admitted it necessarily had to place such information with members of the public to sell and utilize it.
18. Plaintiff took no protective measures to guard the secrecy of such information which it claims Myers disclosed.
This Court makes these additional conclusions of law:
9. Plaintiff's disclosure of such information to potential and actual customers without a confidential agreement destroyed any protection, it may have otherwise had, of it's "Mega Event" appreciation party.
10. Plaintiff's failure to take reasonable protective action to guard the secrecy of such information destroyed any claim by Plaintiff of any right to protection therefor.
11. Because none of the information Plaintiff claims Myers disclosed was entitled to protection, Myers is entitled to judgment on Plaintiff's claim he breached any non-disclosure agreement.
Findings of Fact and Conclusions of law as to DefendantLodwig Enterprises, Inc.:
The only claims against Enterprises which are arguably based upon something other than Myers' breach of a contract with Plaintiff is the second which merely alleges "tortious interference with a contract between Plaintiff and Myers". (Second Cause) As to all other Plaintiff's claims against Enterprises, all depend, in one way or another, upon Enterprises inducing and assisting Myers' breach of contract or using Plaintiff's confidential information obtained from Myers' breach of his contract. Because this Court has fount that Myers is entitled to judgment as to those claims, it follows that all other Defendants are likewise entitled to judgment on those claims.
As to Plaintiff's interference claim against Enterprises, this Court makes these additional findings or fact:
19. Myers' employment contract with Plaintiff was terminable at will as was his 1/21/96 Independent Sales Representative Contract.
20. Myers determined to terminate his employment with Plaintiff before Enterprises made any offer to him after Myers contacted John Krebill about working for Enterprises.
21. Enterprises told Myers he would have to terminate his employment with Plaintiff before Enterprises would consider hiring Myers.
22. Myers told Enterprises, through John Krebill, that he had no contract with Plaintiff.
23. Some of Plaintiff's independent sales representatives had contracts with restrictive covenants and some did not.
24. Enterprises took the word of any person it considered hiring as to the existence of any contract restrictive covenants.
25. Enterprises entered into a subcontract with Myers as an independent sales representative and agreed to purchase and lease carnival equipment to him for him to rent such equipment to Independent Sales representative of both Enterprise and its competitors (including Plaintiff) to conduct carnival like appreciation parties at various schools.
26. Such conduct by Enterprise was carried on in furtherance of Enterprises' own business interest.
This court makes the following additional Conclusions of Law:
12. Enterprises did not intentionally interfere with any relationship between Plaintiff and Myers because Myers told enterprises he had no contract with Plaintiff.
13. Enterprises did not intentionally interfere with any relationship between Plaintiff and Myers because Myers relationship with Plaintiff was terminable at will, with or without notice, so there was no continuing business relationship with which Enterprises could interfere.
14. Enterprises conduct was in conformity with industry practice and not predatory or improper, in contrast to Plaintiff's conduct in obtaining experienced sales representatives.
Findings of Fact and Conclusion of Law as to Keefe and BonitaLodwig:
27. The Plaintiff failed to introduce evidence of proof that Lodwig Enterprises, Inc. is presently or was at its exception undercapitalized.
28. Plaintiff failed to introduce evidence of proof that Lodwig Enterprises, Inc. has at any point in time relevant to those proceedings failed to maintain appropriate corporate records.
29. The Plaintiff has failed to introduce evidence or proof that Lodwig Enterprises, Inc. has failed at any time relevant to these proceedings to adhere to or observe formalities typically engaged in or utilized by corporate entities.
30. The Plaintiff has failed to introduce evidence or proof that retention of the corporate fiction, will result in unjust or inequitable consequences to the Plaintiff.
31. The Plaintiff has failed to introduce evidence or proof that Keefe and Bonita Lodwig exercise control over Lodwig Enterprises, Inc. which is so complete that Lodwig Enterprises, Inc. had no separate mind, will or existence of its own.
32. The Plaintiff has failed to introduce evidence or proof that control by Keefe and Bonita Lodwig over Lodwig Enterprises, Inc. has been exercised in such a manner so as to commit fraud or other illegal act against the Plaintiff.
33. The Plaintiff has failed to introduce evidence or proof that unjust loss or injury will result to it absent an order of court holding Keefe and Bonita Lodwig personally responsible for actions and activities allegedly undertaken by Lodwig Enterprises, Inc.
This court makes the following Additional Conclusions of Law:
15. Under Ohio law, a recognized, legitimate purpose of incorporation is to limit the liability of individual shareholders.
16. The party seeking to impose individual shareholder stability in legal proceedings, such as the instant matter, bears the burden of proof to establish that good and sufficient grounds for piercing of the corporate veil exists.
17. The Plaintiff has failed to establish the required statements necessary for imposition of individual shareholder stability for alleged corporate misdeeds.
Accordingly, the Plaintiff's claims and causes of action asserted against Keefe and Bonita Lodwig, individually, are dismissed.
Note to all Defendants:
 FINAL CONCLUSION OF LAW
32. Plaintiff has failed to establish by a preponderance of the evidence much less clear and convincing evidence any right to suitable relief against any Defendant herein.
33. In view of the foregoing, Defendants' defense of clean hands is rendered MOOT.
34. Because of the time constraints, the Court further finds that there is no just cause for delay.
 JUDGMENT ENTRY
For the reasons set forth above final judgment is hereby entered for all Defendants on Plaintiffs equitable claims.
Pursuant to Civ.R. 54(B), there is no just reason for delay. As to all other matters, this cause is continued.
So ORDERED.
Dated: July 22, 1997 ---------------------- Judge Bruce C. Hoffman